BOROUGH OF HENDERSON *vs.* COUNTY OF SIBLEY.

December 23, 1881.

**County Commissioners—Contract—Ultra Vires.**—The board of county commissioners of the county of Sibley, by resolution, determined to erect, upon the land of the county, a building for a court-house and county offices, to cost not less than $7,500, provided the borough of Henderson would pay into the county treasury $5,000 toward its cost, in consideration of which the resolution granted to the borough the right to occupy and use the second story of the building as a city hall for borough purposes, when not in use by the district court; and further provided that if the county seat should at any future time be removed from the borough of Henderson, the county should have the option of transferring the land and building to the borough, upon the payment of $3,000, or of refunding to the borough the sum of $5,000; and further provided that the county should not sell or convey the property, at any time previous to the removal of the county seat, without the consent of the borough. The proposition was accepted by the council of the borough. *Held*, that the contract was beyond the powers of the county commissioners, and the borough acquired no legal rights under it.

**Same—Liability for Money Received under such Contract.**—The $5,000 having been paid into the county treasury pursuant to the contract, and appropriated by resolution of the board of county commissioners for the erection of a building for county purposes, and actually used for that purpose, *held*, that the borough is entitled to recover the same back from the county, on a count for money had and received.

Appeal by plaintiff from an order of the district court for Sibley county, *Macdonald, J.*, presiding, sustaining a demurrer to the complaint, the substance of which is stated in the opinion.

*Cadwell & Everett*, for appellant.

*C. K. Davis*, for respondent.

The complaint in this action asserts and is based upon the validity of the contract between the borough and the county, and asks damages for breach of that contract. Its averments, therefore, cannot support an action for money had and received, for such an action must be founded on the invalidity of the contract. This contract is not only *ultra vires*, but it is also void, because against public policy.

Money paid under such a contract cannot be recovered back. *Perkins* v. *Savage*, 15 Wend. 412; *Ex parte Bell*, 1 M. & S. 751; *Howson* v. *Hancock*, 8 Term Rep. 575; *Burt* v. *Place*, 6 Cow. 431; *Thomas* v. *City of Richmond*, 12 Wall. 349; *Knowlton* v. *Congress & Empire Spring Co.*, 57 N. Y. 518.

CLARK, J. This case is before us on an appeal from an order sustaining a demurrer to the complaint. The ground of demurrer urged here is that the complaint does not state facts sufficient to constitute a cause of action. The borough of Henderson is a municipal corporation, situated within the county of Sibley. The complaint, after setting forth the corporate character of the parties, alleges that on the 29th day of March, 1879, the board of county commissioners, at a meeting duly held, decided to erect a building suitable for a court-house and county offices, on a lot of land owned by the county, situated within the borough of Henderson, and adopted the following resolution :. "Resolved, that the county of Sibley will erect, on the county four-acre tract of land in the borough of Henderson, known as the 'Court-House Block,' a brick building suitable for and to be occupied, when completed, for court-house and county offices, at a cost to be not less than $7,500, on the condition that the borough of Henderson shall, on or before the first day of June, 1879, donate to the county, to pay into the county treasury, the sum of $5,000 towards the payment of the cost of the said building, and that, when built and completed, the same shall be the property of the county."

The complaint further alleges that, at a meeting of the board, duly held on the 15th day of May, 1879, the following amendatory resolution was adopted: "Resolved, that the resolution relating to the building of a court-house, adopted by the board on the 29th day of March, A. D. 1879, be and the same is hereby amended, by adding to the same the following words, to wit: provided, in consideration of the sum of $5,000, so paid into the county treasury, the borough of Henderson is hereby granted the right to occupy and use the second story of said court-house, when completed, as a city hall, for borough purposes, as long as said county shall own or occupy said building, and at all times when said second story shall not be in use by the district court; and provided, further, that if at any future time the county

seat shall be removed from the borough of Henderson, it shall be optional with the county of Sibley to either transfer to the borough of Henderson the four-acre tract of land on which said court-house and city hall shall be built, upon the further payment to the county of Sibley of $3,000, or refund to the said borough of Henderson the said sum of $5,000. The transfer of said tract of land by said county of Sibley, and the payment of said further sum of $3,000 by the borough of Henderson, or the payment of said sum of $5,000 by the said county to said borough, as the county shall elect, shall be made within six months after the removal of the county seat from Henderson; provided, further, that the county of Sibley shall not sell or convey said building or property without the consent of the borough of Henderson, in writing, at any time previous to the removal of the county seat."

The complaint further alleges that the borough of Henderson, by its council, accepted the proposition of the county, as contained in the foregoing resolutions, and paid into the county treasury the sum of $5,000, and that afterwards, at a meeting of the board of county commissioners duly held on the 16th day of June, 1879, the following resolution was adopted: "Resolved, that the sum of $5,000, deposited in the county treasury of Sibley county by the borough of Henderson, be appropriated out of the general fund of Sibley county for the purpose of erecting a court-house, and that orders be drawn on the treasurer therefor, in such sums as may be necessary, as the work advances."

The complaint further alleges that the board of county commissioners caused a court-house to be erected on said tract of land, and used the money so paid into the county treasury and appropriated in erecting the same; that the second story of the building is designed for a court-room, and is used as such; and that, though the plaintiff has demanded from the defendant the use of the same, when not in use by the district court, for the borough justice to hold his courts in, the county has refused it to the borough for such use, or for any purpose, and has absolutely refused to comply with its agreement in any respect.

. The complaint further alleges that the defendant has had and received from the plaintiff the said sum of $5,000, and that in good conscience and equity it should be compelled to repay the same, and that the plaintiff has duly demanded said sum of $5,000 from the defendant, which has refused to pay the same or any part thereof. The plaintiff demands judgment for the sum of $5,000 and interest.

It is not claimed that there is any express legislative authority for the contract undertaken to be made between the authorities of the county of Sibley and the borough of Henderson. In the absence of an express grant of power by the legislature, we think it quite clear that the county authorities transcended their powers. The power of an organized county, as defined by statute, is—"*First*, to sue and be sued; *second*, to purchase and hold real and personal estate for the use of the county, and lands sold for taxes, as provided by law, and to purchase and hold, for the benefit of the county, real estate sold by virtue of judicial proceedings in which the county is plaintiff; *third*, to sell and convey any real and personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interests of the inhabitants; *fourth*, to make all contracts and do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate powers." Gen. St. 1878, *c.* 8, § 83. The duty of the county organization, with respect to providing county buildings, is imposed in the following section: "Each county organized for judicial purposes shall provide, at the county seat, a suitable court-house, and a suitable and sufficient jail, and fire-proof offices, and other necessary buildings, and keep the same in good repair." Section 86. The powers of county commissioners are defined as follows: "Said board shall have final power to examine and settle all accounts of the receipts and expenditures of the county, and shall have the care of the county property, and the management of the county funds and business, except in cases otherwise provided for; but shall exercise no other powers than such as are given by law." Section 114. The corporate powers of counties are confined to such powers as are expressly granted or necessary to the exercise of those which are granted, and

the county commissioners are confined to the duties and powers directly conferred, or in like manner clearly implied. The general power of a county to make contracts is confined to the property and business of the county; and the uses to which a county may put real estate are to ·provide a suitable court-house, jail, offices, and other necessary buildings. It may not erect buildings for the use of other municipal corporations, or for any third party. It may sell and convey real estate not necessary to its use, but it may not improve it for the accommodation of third parties, nor enter into contracts by which it shall bind itself to hold it for the benefit of third parties. Such objects are foreign to the purposes for which counties are organized, and, if permitted, would open the door to entanglements and abuses against which the public should be, and is, by law protected. *Williams* v. *Lash*, 8 Minn. 441, (496;) *James* v. *Wilder*, 25 Minn. 305.

This contract being beyond the power of the county, the act of the board of county commissioners in making it is not binding upon the county, and the borough acquired no legal rights under it. What, in this condition of affairs, are its rights with respect to the $5,000 which its officers have paid, without consideration and without authority of law, into the treasury of Sibley county, and which has, by resolution of the board of county commissioners, been appropriated for and used in the construction, upon the land of the county, of a building for a court-house and county offices? No reason occurs to us why the borough might not have acquired the use of accommodations for borough purposes under a contract like this, made with a party capable of making such a contract; but this contract lacks binding force on one of the parties, and consequently binds neither. The money was, therefore, paid into the treasury of the county without any consideration whatever. The complaint contains all the necessary allegations to recover as on a count for money had and received. We are of opinion that, upon the facts stated, the plaintiff is entitled to recover back the $5,000 paid by its officers without authority of law into the treasury of the defendant and appropriated to its use.

The case stands thus: The county has obtained and used for public purposes the money of the borough, without any consideration, under a mistaken impression of the public officials that it might be

appropriated and used, under the contract, for the benefit of both parties; whereas, in fact, the benefit to be derived from its payment, appropriation and use can legally be enjoyed only by the county. It is a rule of the common law that money paid by mistake, or for a consideration which has failed, may be recovered back as money had and received by the defendant to the use of the plaintiff. The obligation to repay it arises from the moral duty resting upon every one, in such circumstances, to make restitution; and the common obligation to do justice is binding between municipal and other corporations as well as upon natural persons.

It is argued that where a corporation enters into a contract which is beyond or without its powers, it is acting wrongfully, and the court will not aid it to enforce the contract, or relieve it in any way from the consequences of acts done in pursuance of it. With reference to private corporations, considerations of natural justice have induced the courts greatly to modify the doctrine of the earlier cases on this subject, and there is now a great weight of authority in favor of the rule that where the contract is not prohibited by positive law, and is not immoral nor against public policy, and has been performed by one party so that the other has received the benefit of it, the defence of *ultra vires* cannot be successfully invoked by or against the corporation, when performance is sought to be enforced by the other party. In such cases the courts are inclined to execute justice as between the parties, and leave the state to deal with the corporation for the abuse of its powers as it shall see fit.

But conceding this to be so, it is still claimed that the contract under consideration is against public policy, and within a well-established exception to the doctrine of these cases. But, with respect to municipal and other public corporations, other considerations intervene than those which are applicable to private corporations. County and municipal corporations are created wholly for governmental purposes, and not for the transaction of any business for pecuniary profit, and the exercise by the public officers of powers not granted is no less than an assumption to change the policy of the state with respect to county government. A just regard for the public welfare will not permit the court to compel the performance of a contract

like the one in question. It does not follow, however, that restitution should not be made of the money paid in pursuance of it. The question respects the rights of the citizens of the borough, and not alone the acts of its public officials. The people of the borough are to be protected against the unauthorized acts of its public officers when it can be done without injustice to others, and no principle of public policy will be violated by relieving them, as far as may be just, from the consequences of such unauthorized acts. This money belonging rightfully to the borough, and having been actually appropriated and used by the county for its benefit, an obligation, both moral and legal, rests upon the county to make restitution. *Pimental* v. *City of San Francisco*, 21 Cal. 351; *Gause* v. *City of Clarksville*, 5 Dillon, 165; *Dill* v. *Inhabitants of Wareham*, 7 Met. 438; 2 Dill. Mun. Corp. § 938.

Order reversed.